*75 Opinion of the Court, by
Judge Owsley.
Many years ago, Henry Clay, being the holder of the legal title to a tract of land in the county of Bourbon, departed this life, leaving a tyidow and an only child, Thomas C. Clay. After the death of Henry Clay, his widow intermarried with Robert Cousins, and had by him a son, Samuel W. Cousins, Thomas C. Clay, the son of Henry Clay, subsequently, and whilst he ivas an infant, under the age of twenty-one years, also departed this life, and the present action of ejectment was then brought by the appellants, who are the brothers and sisters of Henry Clay, to recover, as the heirs, of jrlenry, the tract of land held by him at his death.
The only question made in the court of original pi-risdiction, and pow presented for the decision of this court, is, whether, on the death of the infant, Thomas. C. Clay, the land which he derived from his father, Henry Clay, passed by operation of law to the brother and sisters of his father, or descended to his half brother on the part of his mother, Samuel W. Cousins-
(1) In the consideration of this question, it is not necessary that we should travel hack and explore the an-liquated doctrine of the English law .of descents. The righl of inheritance is admitted by all to depend upon principles established by civil institutions, and as the Legislature of this country have enacted a law regulating the descent of estates, it must be by that law that the present question is to be tested and decided.
(2) It-may, however, tenpin some measure to ill us-trate the correct exposition of the act of this country, to *76 premise, that with a slight variation, it is composed of t^o acts of the Legislature of Virginia, and as resp -Cts the present question, must be construed as those acts ot Virginia, taken in connection, should be interpreted. The first act of Virginia was enacted in 1785, and the latter was enacted in 1790.
Extract from the act of 1785.
(3) This act directed.the ago^who'left «either father nor issue, to 1 the°mothcr, brothers and sisters, ; . estate, howsoever acquired, of a person of whatsoever whether of the whole or half blood.
Extract from the act of 1790.
The act of 1785 provides, that where any person hav-. ing title to any real estate of inheritance, shall die intestate, as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course, tjyat is to say:
“Sec. 2. To his children, or their descendants, if any thpre be. ’ ' *
“ Sec.'3. If there be no phildren, nor-their descend-' antSi then to his father.
Sec. 4. If there be no father, then to his mother, brothers and sisters, and their descendants, or such of them as there be.”
(3) The'act of 1785, contains various other provisions; but the foregoing are the only sections which have a ^¡¿ect.bearing upqn the present question; and were such precisely the present stat e of the law, there could bé no reasonable doubt as to the right of the defendant, Cousins, in coparcenary with his mother, to the land in contest; for the title to the land was'in Thomas C. Clay, at the time of his death, and having, at that time, no children or father, according’ to'the explicit lam gu'age ofthe fourth section, the title must have descended to his mother and brother,’ Samuel W. Cousins. It is true, Samuel W, Cousins is not the child of the father of Thomas Ci Clay; but he is the child of Thomas C. Clay’s mother, and is emphatically,'Thomas’C, Clay’s brother.
But the fourth section of the act of 17.85, has undergone a change, by the third section of the act of Virginia, of 17S0. í
That section provides, “ where an infant shall dio without issue, having title to any real estate of inheritance, derived by purchase or descent from the father, tuc mother of such infant.shall not succeed to or enjoy the samo, or any part thereof, by virtue of the above recited act, (the act of 1785,) if there be living any brother or sister of such infant, or any brother or sister of the father, or any lineal descendant of either of them,”
(4) This act excludes the estate was' derived from andtheteBti tor died within age, and S”'13® brothers0and sisters, whetherof *v\,0ie blood
(5) The stat-uteofKen-conpro'vis-ions from the Virginia ^ ^heoit' tire estate descends to fhehaif16™1 blood, and not to the thther’sbroth- ^
Crittenden, for appellant; Taul, for appellee.
(4) This section, no doubt, has so far altered the act of 1785, as to exclude the mother of the defendant, Cousins, from inheriting any part of the land to which Thomas C. Clay was entitled at his death, and to which he became entitled by purchase or descent from his father; but it is only as to the right of the mother to inherit the real estate of her infant child, and which is ■derived by the child from the father, that has undergone any change by the act of 1790, and, of course, the right of the brothers and sisters of an infant, to inherit his estate, must be as perfect since the enactment of the act of 1790, as it was under the act of 1785. Their right is, in fact, greater; for whilst under the act of 1785, the brothers and sisters were entitled only to a coparcenary interest with their mother, in the estate of their deceased Infant brother, derived from his father, they must now, under the act of 1790, excluding the mother, he construed to take the whole estate of their deceased infant brother,
(5) If,, therefore, we are correct in the construction the two acts of the Virginia Legislature, it follows that the defendant, Cousins, who is the brother of Thomas "C. Clay, on the line of his mother, is entitled to the land in contest, by descent from Thpmas C. Clay, and that the court below was Gorrect in so instructing the jury; for each of the sections to which we have referred, are literally copied into the act of this country, and must bo understood to confer upon Cousins the same right that would have descended upon him from his brother, under the two acts of Virginia,
The judgment must, consequently, be affirmed costs.